AUGUST and ELEANOR MERIGHI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Merighi v. Commissioner
Docket No. 10859-80.
United States Tax Court
T.C. Memo 1981-717; 1981 Tax Ct. Memo LEXIS 23; 43 T.C.M. (CCH) 130; T.C.M. (RIA) 81717; December 21, 1981. August Merighi, pro se. Louis T. Conti, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' 1978 Federal income tax in the amount of $ 1,088.60. The first issue for decision is whether petitioners may deduct the cost of August Merighi's transportation between his residence and his place of work under section 162, [1] either because his employment at such site was temporary rather than indefinite or because he had to transport tools to work. The second issue is whether petitioners are entitled to a residential energy credit under section 44C. *24 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated by this reference. Petitioners, husband and wife, resided in Buena, New Jersey, when they filed the petition in this case. They filed a timely joint Federal income tax return for 1978. Eleanor Merighi is a party solely because she filed this joint return with her husband; therefore, August Merighi will hereinafter be referred to as petitioner. Petitioner belonged to the International Brotherhood of Electrical Workers, Local Union 592, Vineland, New Jersey. During 1978, petitioner was employed as an electrician by United Engineers and Constructors, Inc., the general contractor at the Salem, New Jersey, nuclear power plant construction site. That project called for the installation of two nuclear reactors. Work at the Salem site commenced in October of 1968 and continued at least through March of 1979. Petitioner began his employment with the company on March 16, 1970 and worked until March 9, 1979. While the number *25 of electricians employed at the Salem construction site fluctuated from time to time, electricians were employed there continuously from October of 1968 through at least petitioner's termination in March of 1979. However, petitioner's employment between March 16, 1970 and March 9, 1979 was not unbroken. He was first laid off on May 1, 1973. There were also some periods of time during 1975 and 1976 when petitioner was laid off. On April 27, 1977, petitioner resigned for personal reasons. He was then rehired on June 2, 1977, and thereafter worked continuously until his final termination on March 9, 1979. The actual site of the nuclear power plant construction project was on Artificial Island, which was approximately eight miles from the town of Salem, New Jersey. There was no public transportation between Salem and the construction site. The distance between petitioner's residence in Buena, New Jersey and Artificial Island was approximately 35 Miles. Apparently there was no public transportation between Buena and the job site, but petitioner could drive to Bridgeton and get a bus that went as far as Salem. Petitioner's normal working hours at the construction site were *26 from 8:00 a.m. to 4:30 p.m. He also worked overtime and occasionally on Saturdays. Petitioner was subject to loss of pay and possible termination or disciplinary action for failing to report to work on time. Petitioner was required by his employer to provide his own tools so he carried a tool box with him to work each day in the trunk of his automobile. The tool box was large and bulky and took up over half of the trunk space in his automobile. As indicated above, public transportation did not offer petitioner a practical way of getting to and from work, primarily because no public transportation existed between Salem, New Jersey, and the construction site on Artificial Island. If petitioner had not driven his automobile, he would have had to try to get a ride in a carpool from Salem to the construction site. Petitioner testified that on occasion he took a bus from Bridgeton to Salem and rode to the construction site in a carpool. That could not be done when he had to carry his tools, and he normally had to carry his tools except perhaps over a weekend when he worked as a stand-by electrician to shut down the plant in case of an emergency. On his 1978 Federal income tax *27 return, petitioner deducted $ 2,734 for automobile expenses incurred while traveling between his residence and the construction site. Petitioner also claimed a residential energy credit in the amount of $ 300 for adding insulation to his residence. Respondent disallowed the transportation expenses as nondeductible personal expense and disallowed the energy credit for lack of substantiation. OPINION It is well settled that the expenses of traveling between one's home and one's place of employment are nondeductible personal expenses. Section 262; secs. 1.262-1(b)(5) and 1.162-2(e), Income Tax Regs.; Fausner v. Commissioner, 413 U.S. 838 (1973); Feistman v. Commissioner, 63 T.C. 129 (1974). Petitioner argued that he should be able to deduct the automobile expenses he incurred because of the necessity of transporting his tools to and from work. [2] The Supreme Court in Fausner v. Commissioner, supra, held that personal commuting expenses did not become deductible "because by happenstance the taxpayer must carry incidentals of his occupation with him." 413 U.S. at 839. In Feistman v. Commissioner, supra, *28 we said: It is not enough, however, that the taxpayer demonstrate that he carried tools to work. He must also prove that the same commuting expenses would not have been incurred had he not been required to carry the tools. Thus if he would have driven to work in any event, the fact that he carries "tools" with him is not an additional expense, and no part of the commuting cost is deductible. * * * [63 T.C. at 135.] An allocation of costs between "personal" and "business" expenses would be appropriate in this case only if petitioner proved that he would have used an alternate, less expensive means of transportation had he not been required to carry his tools. Petitioner did *29 not carry his burden of proof in that regard. Petitioner did testify that on occasion he took a bus to Salem and rode in a carpool to the construction site. However, his testimony concerning carpooling arrangements was vague. Accordingly, we conclude that petitioner failed to carry his burden of proof. We conclude that petitioner would have driven to work in his car even if he did not have to carry his tools with him. Thus petitioner incurred no additional expense in commuting because of his tools. Petitioner argues alternatively that his employment was temporary. Respondent has conceded that if we find that the employment was temporary, as opposed to permanent or indefinite, then the expenses are deductible as an exception to the general rule relating to the nondeductibility of commuting expenses. McCallister v. Commissioner, 70 T.C. 505, 508 (1978); Norwood v. Commissioner, 66 T.C. 467, 469 (1976). Petitioner argues that because of layoffs, his employment at the construction site was temporary. The fact is that although there were some layoffs in 1973 and again in 1975 and 1976, petitioner worked at the Salem site from 1970 until 1979. *30 In 1977 he left the job for personal reasons and then was rehired on June 2, 1977. He worked at the construction site continuously from June 2, 1977 until March 9, 1979. Even considering the employer-initiated layoffs in 1973, 1975, and 1976, and the 36-day break in service for personal reasons in 1977, we are satisfied that even if petitioner's employment at the construction site could perhaps have been considered temporary in 1975 and 1976, it certainly had become indefinite by 1978, the year in question. McCallister v. Commissioner, supra; Norwood v. Commissioner, supra at 470. Thus petitioner's commuting expenditures are nondeductible personal expenses. Petitioners deducted $ 300 as a residential energy credit based on their alleged expenditure of $ 2,120 for insulation for their residence. Respondent disallowed the credit solely because petitioners had not substantiated the expenditure. [3] Petitioners did not raise this issue in their petition, and although they disputed the matter at trial, they presented no evidence to substantiate the claimed expenditure. There is nothing to establish the amount petitioners expended. There is *31 also nothing in the record that would permit this Court under the Cohan rule to estimate the expenditure. Cohan v. Commissioner, 39 F. 2d 540 (2d Cir. 1930). The basic requirement for application of the Cohan rule is that there be "sufficient evidence to satisfy the trier that atleast the amount allowed in the estimate was in fact spent or incurred for the stated purpose. Until the trier has that assurance from the record, relief to the taxpayer would be unguided largesse." (Emphasis in original text.) Williams v. United States, 245 F. 2d 559, 560 (5th Cir. 1957). Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year here involved.↩
2. This same issue involving the same construction project has been before us several times previously. See, e.g., Dolce v. Commissioner, T.C. Memo. 1980-35; Randazzo v. Commissioner, T.C. Memo. 1977-303; Radocy v. Commissioner, T.C. Memo. 1977-282; Manupello v. Commissioner, T.C. Memo. 1976-237; McGraw v. Commissioner, T.C. Memo. 1976-233; Olsen v. Commissioner, T.C. Memo. 1975-360↩.
3. Section 44C(a)(1) allows a credit for qualified energy conservation expenditures. Under section 44C(c)(1), insulation is included as an energy conservation expenditure.↩